CASE No. 1106.

ROBERTS v. JOHNS.

1. An administrator indebted to the estate to the amount of $1,365, by a past-due sale note, for negroes purchased, obtained order from the Probate judge in November, 1869, to sell, for cash, all the choses in action of the estate, and, after posting at public places a notice of such sale, sold over seven thousand dollars of assets for less than sixty dollars, he being the purchaser, directly or indirectly, of nearly all the notes, including his own. Soon, thereafter, the administrator obtained his discharge from the Probate judge on an *ex parte* application, properly published, but not otherwise served, and paid to a distributee, resident in Georgia, upon her receipt delivered by her husband, the amount due her as appeared by the final return, and as ordered in the final discharge. Afterwards, the administrator realized a considerable amount on the notes purchased by him. This distributee had made several visits to the administrator—had received

some of these notes for collection, and, failing to realize anything, had urged a sale of them, but she had no notice of the sale, and was not fully informed of its details when she signed the receipt. *Held,* that the conduct of the administrator operated as a fraud upon the rights of the distributee, and that she was entitled to have the accounting re-opened.

2. Intestate died in 1863; administration was granted in 1865; assets were sold in December, 1869, and final discharge obtained in March, 1870; action was instituted in September, 1875. *Held,* that the Statute of Limitations did not commence to run in the administrator's favor until his final discharge, and that, therefore, this action was not barred.

3. As the receipt was obtained by the administrator by the exercise of tact, while the distributee was ignorant of important facts and not fully informed of her legal rights, it does not estop the distributee, and must be disregarded as a settlement.

4. The act of 1869 (14 *Stat.* 263; *Gen. Stat. Ch. XXIV.,* ≥ 4,) is an additional prerequisite to the discharge of an administrator, but does not dispense with the other formalities necessary to a final accounting required by previous law. The letters dismissory in this case, therefore, had not the force of a final judgment.

Before PRESSLEY, J., Oconee, October, 1879.

Hon. J. H. Hudson, judge of the Fourth Circuit, sat at the hearing of this appeal, in the place of Associate Justice McGowan, who had been of counsel in the case.

Action by M. J. Roberts and W. O. Johns, as administrators of John B. Johns, deceased, and by Lila B. Johns against James A. Johns, administrator of James Johns, deceased, and Samuel H. Johns. On demurrer, it was held that Lila B. Johns was improperly joined. See *Roberts* v. *Johns,* 10 *S. C.* 101. The opinion states the case.

The Circuit decree was as follows:

James Johns died intestate in 1863, and the defendant, James A. Johns, is his administrator. On February 13th, 1865, he sold the personal estate, including slaves, on credit, the price payable in gold, and he himself purchased some of the slaves, giving his note for same, amounting to $1,365. This and other notes remained unpaid, when our new constitution was adopted in 1868, and then, by reason of the provision concerning notes for the purchase-money of slaves, and the homestead law, it was

supposed that said notes could not be collected.    Plaintiff is administratrix of John B. Johns, who was a distributee of James Johns, deceased.    She removed to Georgia in 1865, and has ever since resided there, making occasional visits to this State.    During a visit in 1869, she urged a settlement of said estate, and the defendant, James A. Johns, offered to divide the notes.    That not being done, he delivered some of them to her for collection.    She failed to collect any and returned them, then urging that the notes be sold- and the estate divided.    This request was repeated by letter after she went home to Georgia.    In November, 1869, the administrator applied to the judge of Probate for leave, which was granted, to sell said notes.    There is some uncertainty about the dates.    The order for sale seems to direct it to be made in November, but it was not made until December 17th, 1869.    At that sale, the administrator, for a mere nominal sum, purchased his own note of $1,365.    Most of the other notes were purchased by Sloan Dickson, who afterwards sold them to said administrator at the same price, but there is no evidence of any previous collusion or understanding between them ; the proof is to the contrary of that.    The administrator has made profit by collections on the notes so purchased.    After the sale, his account was filed in the Probate office.    Plaintiff was duly informed thereof, and of the balance due to her by said account out of proceeds of said sale.    She signed a receipt in Georgia for said balance, and sent it by her husband to this State.    He examined the accounts, inquired into the matters, and on April 19th, 1870, received the said balance, and delivered plaintiff's said receipt to the administrator.    The balance so paid by him has been fixed by a decree of the Probate judge, made on March 7th, 1870, on the *ex parte* application of the administrator for a final discharge.    The referee reports that said discharge was obtained without fraud, but is irregular and void.

The date of the commencement of this suit does not appear in any paper before me.    The report says it was less than six years after March 7th, 1870, and defendant's first pleading or demurrer was served on November 13th, 1875.    I assume that the case commenced more than five years after March 7th, 1870.    The complaint alleges fraud in the sale of said assets, and the referee

finds that there was no fraud therein. I concur with him. There is no allegation as to when the alleged fraud was first discovered, or that plaintiff was ignorant of it, when she received payment of the balance found due to her by the said decree. The administrator claims the benefit of said payment and settlement, and pleads the Statute of Limitations.

As to the claims of the defendant, S. H. Johns, the facts are, that he knew of the said sale and the said decree of March 7th, 1870, and by it a balance was found due by him to the administrator, who sued for that balance before a trial justice, and obtained judgment, which S. H. Johns paid without appeal.

My judgment as to S. H. Johns is, that his failure to raise before the trial justice the question of fraud raised in this case, and his payment of the balance found due by him in that case, forever bars him from litigating again any issue which would have been proper in that case. He, therefore, can recover nothing in this case.

As to the plaintiff, my judgment is, that her settlement in April, 1870, is binding upon her. She cannot now claim that the sale of the assets was without authority of law and void, because she previously assented to and requested it. Nor can she claim that said settlement was made upon the erroneous supposition that the provisions of the constitution, concerning the purchase-money of slaves, and the homestead, made the said notes worthless. That was a mistake of law or rather ignorance of law, and she preferred the sacrifice, rather than risk the expense of having the notes sued.

On the plea of the Statute of Limitations, the plaintiff claims that she is not a resident of this State, and that the running of the statute does not begin until the said decree of March 7th, 1870. I hold that the statute began to run when the act was done which she avers to be fraudulent, to wit, the sale of the assets, which was on December 17th, 1869. I fix this date, because of there being neither allegation nor proof fixing a subsequent date when the supposed fraud was discovered by the plaintiff. The sole cause of action is the supposed fraudulent sale; it therefore occurred at the time of the sale. At that time the Statute of Limitations, as settled by the case of *Lavasseur*

v. *Ligniez,* 1 *Strobh.* 328, allowed five years to a non-resident, and this having been commenced more than five years after either date fixed by me or the referee, the statute is a complete bar to plaintiff's claim, if even the confused state of law when said settlement was made, would justify me in setting it aside.

*It is, therefore, adjudged and decreed,* that the complaint be dismissed, each party to pay his own or her own costs, and each to pay one-third of the costs of the referee and the officers of the court.

From this decree the plaintiff appealed on the following exceptions :

1. That it was error to hold that the claim of plaintiffs against the defendant for an account was barred by the Statute of Limitations, which does not run in favor of an administrator trustee against the distributees of the estate he represents, until such trustee does some act which imports to be a termination of his trust, and the pretended sale of the choses in December, 1869, was not such an act, nor under any view was such an act done until the pretended settlement on March 7th, 1870, counting from which time the plaintiffs would not be barred.

2. That as the plaintiff, M. J. Roberts, resided beyond the limits of this State, and was ignorant of the actings of the administrator and the condition and value of the estate of defendant's intestate, except from such information as she derived from the defendant administrator, no act in the course of administration, whether fraudulent or not, assented to or not, which inured solely to the benefit of the administrator trustee, at the expense of the distributees, could give currency to the Statute of Limitations, and certainly not before the effort at settlement in the Probate office, March 7th, 1870, from which date the plaintiff was not barred.

3. That it was error to strain the law to give the administrator the protection of the Statute of Limitations from the hour of his own private fraud in the administration of the estate unknown to plaintiffs, and which, not done in a public office, and done without authority of law, it was not the duty of plaintiffs to know. The statute does not run in favor of a

trustee from the hour of his committing an act of fraud to his own advantage, if not done in a public office in throwing off his trust.

4. That under the facts, as found by the referee, and not controverted by the judge, showing that the sale of the notes and purchase of them by the administrator, out of which he made profit, and the pretended settlement and discharge were irregular, illegal and void, which was a series of acts of personal wrong and of injurious consequence to the plaintiffs and those whom they represent, it was error of law to hold that the plaintiffs were estopped by the receipt which the plaintiff, M. J. Roberts, signed, which receipt was prepared by the defendant, J. A. Johns, administrator trustee, and based on the fraudulent settlement of March 7th, 1870, which was founded on an *ex parte* settlement between defendants, J. A. and S. H. Johns, and the illegal sale of the notes and purchase of them by said administrator, and thus prepared was forwarded to the plaintiff, a married woman living in Georgia, and signed by her in entire ignorance of the facts of the case, except such information as she derived from the administrator, who, under the decree of Judge Pressley, if sustained, pockets his intestate's personal estate to the exclusion of other distributees.

5. Because it was error to sustain the report of the referee that there was no fraud, when the sale of a large debt due by the administrator' to the estate of his intestate for a nominal sum, was a fraud in law, if not in fact; and the sale of other notes, some of which were on parties owning good real estate, and the consideration of which was not negroes, for a nominal sum, on a day different from that specified in the order of sale, without appraisement and without authority of law, and but few bidders being present, was a fraud in law, if not of fact. From sale of these notes the administrator has collected several hundred dollars, and will realize much more.

6. Because it was error to hold that the Statute of Limitations began to run from the sale of the notes in December, 1869, and that plaintiffs were barred certainly in four years, or, as non-residents, in five years from that date, when the statute

did not run until March 7th, 1870; and six years from that date had not elapsed before suit brought.

7. Because the effect of the decree is to hold that the administrator, whom the referee finds was a purchaser at his own sale of a large amount of the notes sold, at a mere nominal price, can make profit out of his trusts to the injury of his *cestuis que trust,* which is error.

8. Because the sale of the choses in action was upon a day and at a place other than that specified in the order of sale; and the notes were thus sold without appraisement and without authority of law. The law authorizing such sale was not passed until January 14th, 1870; the sale having been made on the 17th day of December, 1869, the sale is therefore void.

9. Because the decree is erroneous and unjust, and will have the effect, if not reversed, of covering an unbroken series of illegal, injurious and fraudulent acts perpetrated by a trustee for his own advantage, and the confiscation of the estate which it was his duty to protect.

10. Because the decree is in other respects contrary to the law, the evidence and justice of the case.

*Messrs. Keith & Verner* and *R. A. Thompson,* for appellant.

*Mr. J. J. Norton,* contra.

There was no fraud in the sale of the notes. This court will not disturb the concurrent findings of referee and Circuit judge. 11 *S. C.* 155, 548; 13 *Id.* 37. Presumption is that administrator and Probate judge did their duty. 7 *Rich.* 511. The sale was valid. 13 *Rich. Eq.* 299; 9 *Id.* 221; *Gen. Stat.,* Ch. XCIV., § 4. Plaintiff has waived her right, if any, by accepting the price. 3 *Wait Ac. & Def.* 473. The defendant has been effectually discharged. *Id.* 157, 460. The Probate Court had jurisdiction. *Const.,* Art. IV., § 1; *Gen. Stat.,* Ch. XXIV., § 4; 14 *S. C.* 211. It is a proceeding *in rem* (3 *Redf. Wills* 412) and conclusive upon all persons. 2 *Greenl. Evid.,* § 672; 9 *Rich.* 131 If not, publication was sufficient service. 14 *Stat.* 263; 1 *N. & McC.* 326; 6 *Rich. Eq.* 114; *Potter's Dwar.*

484. The presumption is that all proceedings necessary to a discharge were done. 2 *Spears* 82; *Dill. Mun. Corp.*, §§ 471, 643. Plaintiff became a party by acting on the judgment. 1 *Tidd* 513. She is bound by her husband's acts. 8 *S. C.* 245; 1 *Willard Ex.* 389; *Rich. Eq.* 59. The judgment of the Probate Court is conclusive. 1 *Hill Ch.* \*21; 3 *Strobh. Eq.* 51; 4 *Geo.* 516; 2 *Rich. Eq.* 63. No other court will set aside the judgment. 7 *Rich.* 32; *Bailey Eq.* 330; 9 *S. C.* 80; 2 *Id.* 442. Plaintiff is bound by her receipt. 3 *Wait Ac. & Def.* 471, 473, 479; 1 *Hill Ch.* 128, 307; 2 *McC.* 321. M. J. Roberts could not sue without her husband. 8 *S. C.* 245. And, therefore, W. O. Johns could not be added by amendment. 2 *Till. & Shear.* 1046; *Wait An. Code,* 335, notes *a., f., n.* and *s.* The action is barred. The fraud, if any, was in the sale. 10 *S. C.* 106; 9 *Id.* 450; 2 *Story Eq.* 1521; 4 *Rich.* 39; 2 *Bailey* 11, 51, 544. She was entitled to only five years. 1 *Strobh.* 328; 4 *S. C.* 257; 12 *S. C.* 42. Cause of action was not changed by the attempt to throw off the trust, but was point from which statute began to run. 3 *Rich.* 448; 14 *Rich. Eq.* 212; *Rice* 319; 4 *McC.* 423.

November 11th, 1881. The opinion of the court was delivered by

HUDSON, A. A. J. In 1865, James A. Johns received letters of administration on the personal estate of James Johns, who died intestate in 1863, leaving as his heirs-at-law, his three sons, Samuel H. Johns, James A. Johns and John B. Johns. In 1864, John B. Johns died intestate, leaving as his heirs-at-law, his widow, M. Jane Johns, and infant daughter, Lila B. Johns. In 1865, this widow became administratrix of his estate, and subsequently W. O. Johns joined her in the administration, to wit, in June, 1878, and has been joined as party plaintiff since the institution of this action, which was begun September 27th, A. D. 1875. In 1866, M. Jane Johns intermarried with John Roberts. Lila B. Johns was at first joined as party plaintiff, but on demurrer the complaint was dismissed as to her on the ground that she was an improper party.

The purpose of the action is to compel James A. Johns to

account to the plaintiffs for his administration of the estate of James Johns, and various acts of maladministration are specifically alleged against him.

These are all denied by him, and he further claims that he has long since fully administered the personal estate; rendered his final account to the Probate Court; was, by that court, finally discharged in due course of law, and holds the receipt, in full, of M. Jane Roberts for the distributive share of her deceased intestate. This receipt is urged in bar of this action, and the Statute of Limitations is also interposed as a defense.

The cause was referred to S. P. Dendy, Esq., as special referee, who found, among other facts, that on February 13th, A. D. 1865, James A. Johns, as administrator, sold, by order of the ordinary of Pickens (then embracing Oconee) district, all the personal estate of James Johns, including negro slaves, on a credit of twelve months, for gold or its equivalent, for the sum $3,862.29, of which $2,665 were for negroes; and of these negro slaves the administrator purchased to the amount of $1,365, and seems to have (like other purchasers) given his note on the usual terms, made payable, we presume, to himself, as we find him in possession of it along with the other sales notes.

Early in November, A. D. 1869, James A. Johns applied to the Probate judge of Oconee for leave to sell the choses in action belonging to the estate of James Johns, and among them these sales notes, none of which seem to have been collected, nor even put in suit. He was allowed, on fifteen days' posted notice, to sell at or near a place called Bachelors' Retreat. After posting, and without advertising in a newspaper (that mode being specially dispensed with), the sale was made at McWhorter's store, in Bachelors' Retreat, in the presence of a very small number of people, but seems to have been made on December 17th instead of November, as was ordered. There is some confusion and uncertainty about these two dates.

At this very quiet sale, the administrator purchased, for fifty cents, the note of $1,365 against himself, and a number of others at the sum, in the aggregate, of $1.67. Sloan Dickson, a friend of the administrator, purchased the balance of the notes for $55.75, and soon thereafter turned them over at said price to

the administrator, who thus became the owner of notes calling for over $7,000 for the pitiful sum of less than $60. Sloan Dickson retained one note, but which one, and for what amount, the referee is unable to report. Prompt return of this sale of *choses in action* was made to the judge of Probate during the month of December, 1869, and a new annual return of accounts was filed, modified by the striking results of this sale.

On November 2d, A. D. 1869, the administrator, James A. Johns, published in the *Keowee Courier*, a weekly paper, published in the town of Walhalla, that on December 1st then next ensuing, he would apply to the judge of Probate of the county of Oconee for his final discharge. The application, however, was not made until March 7th, 1870, but no other notice than the above was published. On this application, the judge of Probate, without special citation of the parties in interest, who had no notice other than by the aforesaid publication, proceeded to examine the administration accounts of James A. Johns and adjust the same. He decreed that he be finally discharged upon the payment to M. Jane Roberts, then sole administratrix of the personal estate of John B. Johns, deceased, the sum of $179.08, as the balance, less advancements, decreed to be due to the estate of the said John B. Johns. On April 19th following, the payment was made and a receipt taken over the signatures of M. Jane Roberts and her husband, John Roberts. On March 7th, when the accounts were audited by the judge of Probate as aforesaid, he granted to James A. Johns his final discharge.

Mrs. M. Jane Johns had removed to the State of Georgia in 1865, and in 1866 she intermarried with John Roberts. She has resided in Georgia since 1865, but made several visits to South Carolina, and whilst here talked much with her brother-in-law, James A. Johns, about his administration and the condition of the estate. He represented to her the difficulty of collecting the notes, and on more than one occasion offered to divide them with her. He went so far as to place some of them in her hands for collection, but failing in her efforts to induce the makers to pay, she returned them to him. After her return to Georgia she wrote to James A. Johns, urging a settlement, and suggested a sale of the notes. The homestead exemption

and the supposed invalidity of contracts for the purchase of negro slaves were among the difficulties assigned by the administrator as impeding the collection of the notes, and, perhaps, rendering them worthless.    Suits, however, were not instituted by him to enforce payment.

It was after the receipt of her letter that the administrator sold the assets and obtained his discharge as aforesaid.

In the testimony reported by the referee it appears that since the sale of these assets and their purchase by the administrator he has realized a considerable amount of money from collections thereof—perhaps ten times the amount which he paid for these notes—and has a fair prospect of realizing still greater amounts.

As matter of fact, the referee finds further that the administrator, James A. Johns, was not guilty of fraud in procuring his final discharge, but that the proceedings were irregular and do not estop her.

He concludes, as matters of law, that the Statute of Limitations began to run from March 7th, 1870, when the final discharge was rendered, and that, having six years to run, the plaintiff is not barred, she having commenced her action September 27th, 1875 ; that the letters dismissory cannot act as an estoppel within the period fixed by the statute against allegations of fraud and mistake, and that the same are void for irregularity in procuring the final decree and discharge; that the defendant, Samuel H. Johns, is concluded by the arbitration and settlement with the administrator; that the sale of the *choses in action*, December 17th, 1869, whilst not fraudulent, was irregular, without authority of law and void, and, finally, that the administrator, James A. Johns, is liable to account to the plaintiffs, M. Jane Roberts and W. O. Johns, for the share of John B. Johns, deceased, in the personal estate of his father, James Johns.

On reviewing this judgment of the referee, the Circuit judge, agreeing with him in his findings of fact, overrules the referee in his conclusions of law.    He holds with the referee that S. H. Johns is bound by the settlement made by him with the administrator upon an arbitration had between them, and duly accepted and carried out.    As S. H. Johns does not appeal, this

judgment of the court below must stand as to him, and excludes him from further claim to an accounting.

As to Mrs. M. Jane Roberts, the Circuit judge holds that she is bound by the settlement of April, 1870, when she acknowledged to have received payment in full of the share of the personal estate of James Johns to which her deceased husband, John B. Johns, was entitled. He says that " she cannot now claim that the sale of the assets was without authority of law and void, because she previously assented to and requested it." He further holds that the Statute of Limitations began to run against her, not from the date of the alleged final discharge of the administrator, nor from the date of the receipt which she gave him, but from December 17th, A. D. 1869, when the assets were sold by him; this being, as he says, the only fraudulent act alleged by her against him.

For these reasons the complaint is dismissed. From this judgment the appeal of the plaintiffs brings the cause to this court.

The Circuit judge does not pretend to vindicate the conduct of the administrator, James A. Johns, nor to uphold his settlement with M. Jane Roberts as fair and just. This cannot be successfully done. The facts as stated above, if they do not shock our sense of fair dealing and good faith, certainly do show a maladministration and mismanagement of a high trust at variance with the fundamental rules of law by which a fiduciary must be controlled in the performance of duty. And whilst both referee and judge concur in exonerating James A. Johns from fraud in his administration, it is evident from the testimony that it is charity to the administrator to discharge him from actual or positive fraud. But from the charge of that constructive fraud arising from neglect of duty and mismanagement of his trust, he cannot escape. Whether intentionally or not, he has, under the pretended forms of judicial proceedings, so administered his trust as to derive very great profit to himself and to inflict serious injury upon the estate of John B. Johns. Under no circumstances will the law sanction this, but will readily grant relief to the losing party, unless that party has, by imprudent conduct, willfully closed the doors of justice,

or is shut out by severe but necessary rules of law of a technical character. Taking the most indulgent view of the conduct of this administration in the light of the then surrounding circumstances, we are unable to discover facts justifying the extraodinary course of this administrator. The sale of the *choses in action* of the estate, a large part of which consisted of sales notes in the hands of the administrator, and one of them evidencing a large purchase made by himself at his own sale, and which at maturity became cash in his hands by operation of law, was certainly a most extraordinary method of administering assets. It was sanctioned by no statute, and neither the alleged requests and suggestion of Mrs. Roberts, nor the order of the Probate Court, can, under the peculiar circumstances of this case, be set up as a justification of the event, nor be interposed as a bar to the plaintiffs' demand for an accounting.

The application for the order of sale was *ex parte* and furnishes no such protection to him at whose instance alone it was procured as will shield him from the claim of those who were not parties to it to have its good faith investigated. He was at that time clearly chargeable with the $1,365 and interest—the amount of his purchase of negro slaves at his own sale—and no request of Mrs. Roberts to sell the notes, nor order of the Probate judge, can be construed to authorize or to contemplate the sale of this debt.

So far as this administration is concerned, it is manifest that, in the opinion of the administrator at least, it was to his personal advantage that contracts for the sale of negro slaves should be deemed invalid. He had an interest and a motive, therefore, not to urge other purchasers to pay such claims, and to this motive may be referred his utter failure to use diligence in striving to enforce payment by suits. Nor can his apparent frankness in placing some of these claims in the hands of Mrs. Roberts for collection be advanced in his defense when we consider that she was without authority to collect, and her foreseen failure in her efforts to do so was well calculated to elicit from her a request to sell, or, in any manner available, to realize whatever might be from them.

In the eye of the law this administration was conducted in a

manner for which good faith finds no apology; and because of
its profitable eventuation to the administrator and inequitable
result to the plaintiffs, coupled with the abuse of confidence
legally reposed betwixt persons standing in a fiduciary relation,
the accounting must be opened in behalf of the plaintiffs, unless
Mrs. Roberts is, as the Circuit judge has decided, estopped by
her own conduct or concluded by the judgment of a court of
competent jurisdiction or barred by the Statute of Limitations.
In our opinion she is not so estopped, concluded nor barred.

The Statute of Limitations did not begin to run against the
plaintiffs' right to an accounting until the administrator had
done some positive act manifesting a clear intention to terminate
his trust. This was never done until March 7th, 1870, when
he obtained from the Court of Probate his final discharge, and
within the statutory period from that date this action was begun,
as is admitted by counsel for both plaintiffs and defendant.

It is error to hold that the statute began to run from the date
of the alleged fraudulent sale of notes. That was but a single
act of administration, and how the administrator himself would
deal with it, and what position in regard thereto any of the
parties in interest would take, could not be certainly known,
nor need be made known until the attempted putting off the trust.
Then, and not till then, are parties in interest presumed to have
knowledge of the claim of the administrator as to any and all
items of his account and special acts of administration. Any
other rule would subject *cestuis que trust* to serious hazards in
suffering administrations to progress to maturity before demand-
ing a general and full accounting.

We are likewise of opinion that Mrs. Roberts is not concluded
by her receipt of April 19th, 1870. A receipt and release are
always open to explanation and impeachable for fraud or mistake.

This receipt, covering the share due to the estate of John B.
Johns, as ascertained in the *ex parte* accounting of March 7th,
1870, was prepared by the administrator and forwarded to Mrs.
Roberts at her home in Georgia. She was greatly in need of
money, and had, for some time, been importuning James A.
Johns for a settlement. She sent her husband with the receipt,
signed by her and him, to Walhalla. On his arrival there,

James A. Johns furnished him with $5 to employ a lawyer to examine the accounts. Some examination was made, and the money received, and the receipt delivered.

Upon a careful review of the testimony, we do not think that this settlement, so disadvantageous to the plaintiffs, and so favorable to the administrator, James A. Johns, was made upon a fair disclosure of the facts, nor can we avoid the conclusion that much tact was exercised by the administrator in effecting a settlement known by him to be profitable to himself at the expense of his *cestui que trust,* whom he well knew to be ignorant of important facts and not informed of her full legal rights.

To put aside such a settlement, it is not necessary that there should be actual fraud or intended wrong where the parties occupy a fiduciary relation. The advantage reaped by the trustee at the expense of an uninformed beneficiary is sufficient ground to justify the opening of the accounts. Under the circumstances of this case, this receipt is not an estoppel, and must be disregarded as a settlement.

But it is urged that the final discharge by the Court of Probate, after the required statutory notice, has the force of a final judgment of a court of competent jurisdiction, and, unappealed from, is binding upon the plaintiff, M. Jane Roberts. She resided in the State of Georgia, and it is not pretended that she was cited, or in any other way, actually or constructively, notified to appear and show cause, except by this publication.

The language of the act is as follows: "It shall not be lawful for any of the judges of Probate in this State to grant a final discharge to any executor or executrix, administrator or administratrix, trustee, guardian or committee, without he, she or they first giving notice in some county newspaper, (if there should be no newspaper published in the county, then in some public journal having the greatest circulation therein,) for the space of at least one month, that on a day certain, he, she or they will apply to the judge of Probate of the county wherein his, her or their bond is filed, for a final discharge." *Gen. Stat.,* Ch. XXIV., § 4.

It is contended by the defendant's counsel that this notice is all the citation of parties in interest necessary to be given, and

that thereafter a final discharge granted upon an account stated has the force and effect of a final judgment, and is binding on all parties interested.

This is not the construction proper to be given to this act. Such an interpretation would evidently lead to mischief, whereas the purpose of the act is to guard against hasty and premature discharges from the serious office of a trustee.

The act makes this publication of notice a condition precedent to such discharge, but in no way dispenses with the important proceedings on final accounting required by law before this act. It does not dispense with any formalities previously required, but prescribes this one in addition to existing prerequisites. Persons, to be bound by the judgment of the Probate Court upon the final accounts of a fiduciary, must be made parties thereto by proper proceedings and established forms of citation or summons. At the end of such proceedings, a final discharge is still not to be granted by this court of limited jurisdiction unless this prescribed notice, by publication, shall be or shall have been given. That legislation would be open to grave objection which should provide that any persons, but especially infants, lunatics and non-residents, may be made parties to an action in a court, and bound by its judgment, by the simple publication for one month of a notice in a newspaper requiring them to appear and show cause. Yet this act makes no exception in favor of infants, lunatics, parties under disabilities and non-residents.

An act will not be so construed as to increase rather than correct an evil intended to be remedied, unless the words of the act, in plain language, or by necessary implication, exclude a more reasonable interpretation. There is no such difficulty here, because the words of this act, their implication, as well as the mischief to be remedied, all concur in leading to the construction we have given it. The law here is evidently intended as an additional protection to *cestuis que trust*, instead of a deprivation of the protection they already enjoyed against trustees, under well-considered acts of legislation, and under the wise rules by which the practice of our courts were and are and ought to be regulated.

We conclude, therefore, that these proceedings in the Probate Court, by which James A. Johns sued out his final discharge, do not bind Mrs. M. Jane Roberts, who was not made a party thereto by sufficient legal process. And for the reasons above given, we hold that by reason of nothing which appears in the brief and argument is she estopped or barred of her right to demand of James A. Johns an account of his actings and doings as administrator of the personal estate of the intestate, James Johns. The plaintiffs are entitled to demand and receive of him the unpaid balance of the share of said estate due to their intestate, John B. Johns.

It is not intended, however, that this judgment shall do more than determine the liability of the defendant, James A. Johns, to account to the plaintiffs. The principles by which the details of that accounting are to be governed are all left open for adjudication by the court below in passing upon the itemized account.

The judgment of the Circuit Court is reversed, and the cause remanded to that court for such orders and proceedings as may be necessary to carry into effect this judgment.

SIMPSON, C. J., and McIVER, A. J., concurred.